UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

INTERPLASTIC CORP.,　　　　　　　　　　　　　　CIVIL NO. 09-587 (JNE/JSM)

　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　REPORT AND RECOMMENDATION

HUDSON SOLID SURFACES
INTERNATIONAL, L.L.C.,

　　Defendant.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came before the undersigned upon plaintiff's Motion to Compel Arbitration of Counterclaim and for Attorney Fees [Docket No. 10] and defendant's Motion to Stay Proceedings Pending Arbitration [Docket No. 24]. Ivan N. Levy, Esq., appeared on behalf of plaintiff. Mark Smith, Esq., appeared on behalf of defendant. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

I.　　FACTUAL BACKGROUND

Plaintiff Interplastic Corporation ("Interplastic"), a Minnesota corporation, is a manufacturer of polyester resins that are used by the composites industry. See Complaint, ¶¶ 1, 4; Answer, ¶¶ 1, 4. Defendant Hudson Solid Surfaces International, L.L.C. ("Hudson"), an Oklahoma corporation, is a manufacturer of solid surfaces that use various composite products, including resin. See Complaint, ¶¶ 2, 5; Answer, ¶¶ 2, 5. On June 13, 2008, Interplastic and Hudson entered into an Open Account

Agreement ("Agreement"), in which Interplastic agreed to sell resin to Hudson. <u>See</u> Exhibits to Amended Motion to Compel Arbitration and for Attorney Fees ("Pl.'s Ex."), Ex. D. The Agreement provides in relevant part:

> A. **Open Account**. The Customer desires to purchase certain goods from Seller on the credit terms set forth herein (the "open Account").
>
> B. **Agreement**. The Seller to sell the Customer goods on Open Account in accordance with the terms of this Open Account Agreement (this "Agreement").
>
> **NOW, THEREFORE**, in consideration of the above recitals and the mutual covenants contained in this Agreement, the Parties hereby agree as follows:
>
> 1. **Credit Terms**. Subject to the provisions of this Agreement, Seller herby extends credit to the Customer for the purpose of purchasing goods from the seller. Unless and until changed by the Seller, the Customer's payment terms are NET (Sixty) days from the date of Seller's invoice.
>
> \* \* \*
>
> 4. **Terms & Conditions**. The Terms & Conditions on the back of this page (or if this Agreement is faxed, on the following page) are incorporated herein by reference and made part of this Agreement. The parties have read these Terms & Conditions and hereby expressly agree to all of those provisions.

<u>Id.</u> (emphasis in original).

With regards to dispute resolution, the Term & Conditions to the Agreement provided that the buyer's claims for defective goods are subject to binding arbitration, while the seller has the right to bring claims for unpaid goods in a court of law:

> 3.1 **Binding Arbitration**. Except as otherwise provided herein, any and all unresolved disputes between the Seller and the Buyer shall be resolved by BINDING ARBITRATION under the rules of the American Arbitration Association. One arbitrator shall be used.

> 3.2 **Claim for Defective Goods**. BUYER MAY FILE A CLAIM AGAISNT SELLER FOR ALLEGED DEFECTS IN THE GOODS. Any such claim shall be made in an arbitration proceeding consistent with § 3.1 (even if the Seller files suit in court of law).
>
> 3.3 **Suit for Unpaid Goods**. If the Buyer fails to fails to pay Seller for products purchased, then the Seller may sue the Buyer in a court of law. In all such cases, Buyer shall be responsible for all collection costs (including reasonable attorney fees for both an outside attorney and in-house counsel, so long as there is no double payment).

Id. (emphasis in original).

On February 16, 2009, Interplastic commenced a civil action in Minnesota state court. In the Complaint, Interplastic alleged that it had extended credit to Hudson so that Hudson could buy composite products from it, and that Hudson purchased goods from Interplastic, but then failed to remit payment. See Complaint, ¶ 9. According to Interplastic, Hudson owed $107,420 in damages due Hudson's failure to pay for the goods provided to Hudson. Id., ¶ 16, Ex. C; see also Pl.'s Ex. A. Hudson removed the case to federal court on March 13, 2009. See Docket No. 1.

On March 13, 2009, Hudson filed an Answer & Counterclaim. See Docket No. 3. In its Answer, Hudson denied Interplastic's claims for payment for the unpaid goods on grounds that the goods were defective, did not meet the required and promised specifications, and claimed it was entitled to a set-off for its damages. Answer & Counterclaim, ¶¶ 9, 12.

In its counterclaim, Hudson alleged that after inquiring of Interplastic whether it could produce resin for Hudson's needs, Interplastic sent samples to Hudson. See Answer & Counterclaim, ¶ 43. On or about May 16, 2008, Hudson received the sample

3

resin from Interplastic, which after testing was determined to be within the required specifications and acceptable for production.  Id., ¶ 46; see also Affidavit of George Saxby ("Saxby Aff."), ¶¶ 6-7.  According to Hudson, based on the sample and Interplastic's representation that it could supply Hudson with resin in conformity with the sample, Hudson made the decision to place orders with Interplastic for the resin.  Id., ¶¶ 47, 49; see also Saxby Aff., ¶¶ 5, 7, 8.

Shipments of the resin were sent by Interplastic to Hudson between June 2008 and January 2009.  Answer & Counterclaim, ¶ 51; see also Saxby Aff., ¶ 11.  Hudson alleged that some shipments of resin did not test within specifications and were defective, and that on many shipments, Interplastic's own specification documentation showed that the resin shipped was out of specification.  Id., ¶¶ 52-53; see also Saxby Aff., ¶ 12.  Hudson asserted that it gave timely notice of rejection, non-conformity and breach on all such occasions.  Id.  Hudson also claimed that when the resin received by Interplastic was placed into production, it experienced problems with the production. Id., ¶ 56; see also Saxby Aff., ¶ 13.  Hudson claimed that on multiple occasions, Interplastic acknowledged that the resin it supplied to Hudson was outside of the required and promised specifications, and that Interplastic attempted to persuade Hudson to continue purchasing resin and to continue production with non-conforming resin, with assurances and promises that the problems were being rectified and that Interplastic would adjust and compensate Hudson for the costs and damages associated with using the allegedly non-conforming resin.  Id., ¶¶ 58-61; see also Saxby Aff., ¶¶ 14-18; Affidavit of Paul Venamon, ¶ 6.

Based on these facts, Hudson asserted a breach of contract counterclaim, claiming that Interplastic breached the Agreement when it failed to supply non-defective resin consistent with the May sample. Answer & Counterclaim, ¶¶ 64-67. Hudson also brought a breach of warranty counterclaim, based on Interplastic's failure to live up to its promises that it would provide Hudson with resin that was consistent with the May sample of resin and that it would be within specifications and not defective; a fraudulent or negligent misrepresentation counterclaim, based on Interplastic's claim that it could produce resin consistent with the May sample and its later representations that it would rectify the problems and compensate Hudson for any resulting losses; and a claim under the Minnesota Deceptive Trade Practices Act and the Minnesota Consumer Fraud Act for Interplastic's failure to provide resin within the required and promised specifications. Id., ¶¶ 68-91. As part of its prayer for relief, Hudson asked that that the Court order the parties to arbitration on any claims that were subject to arbitration. Id. at p. 17, ¶ E.

Hudson also asserted numerous affirmative defenses claiming that Interplastic's claims were barred based on:

- Interplastic's violations of express and implied warranties;

- Interplastic's failure to deliver conforming goods, and delivery of goods that were inconsistent with its samples, did not meet the required and promised specifications, and were defective;

- Hudson's timely and proper rejection and notification of Interplastic's breaches;

- Interplastic's misrepresentations and promises to supply or remedy with conforming goods that were consistent with its samples and in compliance with the required and promised specifications;

- Interplastic's unclean hands and bad faith;

5

- Hudson's rights to set-off and deduction for damages incurred by Hudson as a result of Interplastic's breaches against any amounts claimed owed for products delivered;

- The unconscionable and unenforceable Agreement.

Answer & Counterclaim, ¶¶ 22-24, 26, 28, 32, 35-38.

On March 13, 2009, the same day it filed its Answer & Counterclaim, Hudson initiated arbitration proceedings before the American Arbitration Association ("AAA") against Interplastic (Arbitration Matter 71 181 00180 09) to address the very same claims that made up its counterclaims in the instant suit. See Affidavit of Counsel Mark A. Smith ("Smith Aff."), ¶¶ 7-8. The first preliminary hearing in the arbitration was held on May 7, 2009. Id., ¶ 9.

Interplastic has now brought a motion for an order compelling Hudson to arbitrate its counterclaims before the AAA, dismissing the counterclaims, and awarding it reasonable attorney fees for the time and expenses it incurred in connection with this Motion.

In response, Hudson asked that the Court deny the motion to compel arbitration, as arbitration has been underway since before the motion to compel was filed. In addition, Hudson moved this Court for an order staying the present proceedings pending the outcome of the arbitration.

## II. DISCUSSION

The parties are in agreement that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to the arbitration clause at issue. See Def.'s Mem. at pp. 10, 11. Specifically, the FAA provides that written agreements to arbitrate contained in any contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts …." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (noting that there is a strong presumption in favor of arbitration and any doubts concerning arbitration rights should be resolved in favor of arbitration).

Additionally, the parties are in agreement that Hudson's affirmative defenses and counterclaims pertaining to the defective resin must be arbitrated. See Combined Reply and Responsive Memorandum by Interplastic Corporation [Docket No. 35] ("Pl.'s Reply") at 8; Combined Memorandum of Hudson Solid Services in Response to Motion to Compel Arbitration and in Support of Motion to Stay [Docket No. 26] ("Def.'s Mem.") at pp. 13, 14, 20. The arbitration proceedings on these counterclaims were initiated by Hudson on March 13, 2009, prior to the filing of Interplastic's motion to compel arbitration on March 31, 2009. Therefore, Interplastic's motion to compel arbitration of these claims should be denied as moot and Interplastic's request for fees denied, as there is no relief to be granted.[1]

---

[1] Similarly, the parties agree that Interplastic's claim for nonpayment cannot be compelled to be resolved in arbitration, as the carve-out provision of the Agreement permits Interplastic to pursue the claim in a court of law. See, generally, United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") Kansas City Southern Transport Co., Inc. v. Teamsters Local Union # 41, 126 F.3d 1059, 1067 (8th Cir. 1997) (quoting same). In any event, Hudson has not brought its own motion seeking to compel Interplastic to litigate its claim in arbitration.

Thus, the only issues for this Court to resolve are (1) whether Hudson's counterclaims should be dismissed; and (2) whether Interplastic's suit for nonpayment on the account should be permitted to proceed at the same time as Hudson's arbitration of its counterclaims related to the allegedly defective resin, or whether the suit should be stayed until the arbitration proceeding is resolved.[2]

### A.     **Dismissal of Hudson's Counterclaims**

Interplastic requested that the Court dismiss Hudson's counterclaims is rejected. This Court finds that under the FAA, only a stay, and not dismissal, of the arbitrible counterclaims during the pendency of arbitration, is authorized. See Telectronics Pacing Systems, Inc. v. Guidant Corp., 143 F.3d 428, 432 (8th Cir. 1998) ("The FAA provides both for a stay of litigation raising an arbitrable dispute, 9 U.S.C. § 3, and an affirmative order to compel arbitration, 9 U.S.C. § 4, to enforce such agreements."); Houlihan v. Offerman & Co., 31 F.3d 692, 694-95 (8th Cir. 1994) ("under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute

---

[2]     In its initial moving papers, Interplastic requested this Court determine that it was not liable for any of Hudson's counterclaims on the basis that a different company, Interplastic Manufacturing Company, manufactured the goods sold to Hudson. See Combined Memorandum by Interplastic Corporation ("Pl.'s Mem.") at p. 14. In its Reply, Interplastic did not respond to Hudson's opposition to this argument. See Pl.'s Reply. At the hearing, Interplastic's counsel represented that the parties had stipulated that the real parties in interest were before the Court. In an event, this request is denied. The purpose of the FAA is "'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.' To effectuate that goal, Congress provided a limited role for courts, allowing them to 'consider only issues relating to the making and performance of the agreement to arbitrate.'" Koch v. Compucredit Corp., 543 F.3d 460, 463 (8th Cir. 2008) (quoting H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967)). Where Interplastic has petitioned this Court for an order compelling the arbitration of Hudson's counterclaims, it cannot at the same time ask the Court to adjudicate the counterclaims.

falls within the scope of that agreement. . . . [a] federal court must stay court proceedings and compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement"); see also Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 732 n. 7 (7th Cir. 2005) ("We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright.") (citing Tice v. American Airlines, Inc., 288 F.3d 313, 318 (7th Cir. 2002)); Simitar Entertainment, Inc. v. Silva Entertainment, Inc., 44 F. Supp.2d 986, 997 (D. Minn. 1999) ("Once a Court has determined, that a dispute falls within the scope of an arbitration agreement, the proceedings in the case, on the issues referable to arbitration, must be stayed pending the completion of arbitration."); DSAI, Inc. v. Market Direct, LLC, NO. CIV, 06-4545 MJD/SRN, 2007 WL 551614 at *9 (D. Minn. Feb. 21, 2007 (finding that where a party brought a motion to dismiss on the basis that all claims were subject to arbitration, a stay rather than outright dismissal; was appropriate). The law is clear – where a court finds under that FAA that claims are governed by a valid arbitration agreement, the relief is limited to compelling arbitration and staying the litigation of those arbitrable claims. The FAA does not give the Court the authority to dismiss the counterclaims.

     **B.**    **Stay of Suit Pending Completion of Arbitration**

Hudson submits that the suit should be stayed until the arbitration proceeding is resolved. In support, Hudson argued that when claims raised in a court proceeding contain issues subject to arbitration, the "proper method under the FAA and controlling law is to stay the proceedings, pending the outcome of the arbitration." See Def.'s Mem. at p. 13. Stated simply, Hudson asserted that where Interplastic's right to recover

is dependant on the arbitrator's decision regarding whether Interplastic supplied Hudson with defective resin, this Court should exercise its inherent power and stay the suit. Id. at pp. 15-17. Further, Hudson argued that nothing in the Agreement gives Interplastic's claim for unpaid goods in court priority over its claims for defective goods before an arbitrator. Id. at p. 14.

Interplastic countered that: (1) allowing a stay of its account claims while arbitration proceeds for the defective goods claims would defeat the intent of the parties provided for by the exception carved out by the Agreement, which was to allow account claims to be resolved expeditiously; (2) such a stay would result in it being forced to arbitrate its account claims; (3) the possibility of piecemeal litigation does not mandate a stay; (4) the claims do not overlap and the Agreement does not prefer either claim, thus requiring that the two claims proceed simultaneously in their respective forums; (5) the FAA does not require a stay; (6) the inherent power of the Court to stay proceedings should not be exercised in this case, where the issues in this case are not complex, this is not a multi-party dispute, and there is no threat of inconsistent results; and (7) a stay would deprive Interplastic of the jurisdiction benefits available to it under the Agreement. See Pl.'s Mem. at pp. 6-17.

As a general rule, where one claim is subject to arbitration and another claim is not, "relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." Moses H. Cone., 460 U.S. at 20; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) ("we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation."). At the same time, a district court has discretion to stay litigation pending the outcome of the arbitration. See AgGrow

Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777, 782-83 n. 5 (8th Cir. 2001) (courts have discretion to stay litigation when a parallel arbitration proceeding should have priority); see also All Saint's Brands, Inc. v. Brewery Group Denmark, A/S, 57 F. Supp.2d 825, 832 (D. Minn. 1999) ("the Court has the power to stay resolution of all claims made by non-parties to the agreement as well as those claims not within the scope of the Agreement.") (string citation omitted); see generally, Landis v. North American Co., 299 U.S. 248, 254-255 (1936) (finding that courts have the ability to stay proceeding based on inherent power of the district court to control its own docket).

When considering whether to grant a discretionary stay, courts weigh 'the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." AgGrow, 242 F.3d at 783; see also Simitar Entertainment, Inc., 44 F.Supp.2d at 997 ("Expanding the stay, so as to encompass all of the nonarbitrable claims in the case, is appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.") (citations omitted); Liberty Mut. Ins. Co. v. Mandaree Public School Dist. No. 364, 459 F. Supp.2d 866, 873 (D.N.D. 2006) ("In deciding whether to grant a discretionary stay, courts should consider judicial economy, avoidance of confusion, and possible inconsistent results.").

This Court finds that the proper course in this case is for the Court to exercise its inherent power to stay the court action pending the completion of the arbitration of Hudson's claims. As a preliminary matter, this Court rejects Interplastic's argument that a stay of its account claims would defeat the intent of the parties, as set forth in the

11

Agreement, or would deprive Interplastic of the jurisdictional benefits of the Agreement. Nothing about a stay in this case defeats the plain language of the Agreement, as all of the defective product claims will be adjudicated in arbitration and all of the account claims will ultimately decided in the district court. Further, whether Hudson owes Interplastic for the resin is dependant on and inextricably intertwined with the issues raised by Hudson's affirmative defenses and counterclaims. Thus, despite Interplastic's contentions to the contrary, the claims of the parties overlap and that there is clearly a threat of inconsistent results if the claims were allowed to proceed simultaneously in different venues. For example, not staying the court proceedings so as to allow the arbitration of Hudson's claims to go first, Hudson could end up in the untenable position of being precluded from pursuing its defenses to the account claim. Alternatively, if the court and arbitration claims went forward simultaneously and Interplastic prevailed on its account claim in federal court, while Hudson prevailed on its defective goods claims in arbitration, there would obviously be inconsistent results.

As this Court finds that Hudson's claims bear directly on and could act as a bar to Interplastic's claim for nonpayment, the Court will exercise its inherent power in the interests of justice to recommend staying the entire court action pending the completion of arbitration.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. Plaintiff's Motion to Compel Arbitration of Counterclaim and for Attorney Fees [Docket No. 10] be **DENIED** as moot.

2. Defendant's Motion to Stay Proceedings Pending Arbitration [Docket No. 24] be **GRANTED**.

Dated: October 26, 2009

                                           s/ *Janie S. Mayeron*
                                           JANIE S. MAYERON
                                           United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 12, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **November 12, 2009**.